# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 7, 2026          Decided July 31, 2026

No. 25-5353

RALPH DE LA TORRE, M.D.,
APPELLANT

v.

BILL CASSIDY, M.D., IN HIS CAPACITY AS CHAIRMAN OF THE
COMMITTEE ON HEALTH, EDUCATION, LABOR, AND PENSIONS
OF THE UNITED STATES SENATE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-cv-02776)

---

*Derek L. Shaffer* argued the cause for appellant. With him on the briefs were *Christopher G. Michel*, *William A. Burck*, *Alexander Merton*, *Rachel G. Frank*, and *Kaylee A. Otterbacher*.

*Vivian M. Rivera*, Assistant Legal Senate Counsel, Office of Senate Legal Counsel, argued the cause for appellees. With her on the brief were *Morgan J. Frankel*, Senate Legal Counsel, *Patricia M. Bryan*, Deputy Senate Legal Counsel, and *Thomas E. Caballero*, Assistant Senate Legal Counsel.

Before: HENDERSON, MILLETT, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: In 2024, Steward Health Care System, LLC, a nationwide healthcare system, filed for bankruptcy. The U.S. Senate Committee on Health, Education, Labor, and Pensions launched an investigation into why that happened. As part of its investigation, the Committee subpoenaed Steward Health's then-CEO, Dr. Ralph de la Torre, to testify at a hearing.

Dr. de la Torre objected to the subpoena on constitutional grounds and refused to appear. The Committee voted out criminal and civil contempt resolutions, and the Senate passed the criminal contempt resolution unanimously.

Dr. de la Torre sued the Committee and twenty of its members, alleging that their actions, including attempting to enforce the subpoena and voting on the contempt resolutions, violated his Fifth Amendment rights. The district court dismissed the case as barred by the Constitution's Speech or Debate Clause. We affirm. Dr. de la Torre's arguments are wholly meritless under longstanding precedent.

**I**

**A**

The U.S. Senate Committee on Health, Education, Labor, and Pensions has legislative authority to, among other things, "study and review, on a comprehensive basis, matters relating to health, education, and training, and public welfare, and report thereon from time to time." STANDING RULES OF THE

SENATE, S. DOC. NO. 113-18, Rule XXV § 1(*l*)(2) (2013).  To that end, the Senate has vested the Committee with full subpoena power.  *Id.* Rule XXVI § 1.

**B**

We draw the following facts from Dr. de la Torre's amended complaint, supplemented by matters of which we may take judicial notice.[1]

After a career treating patients, Dr. de la Torre founded Steward Health Care System, LLC, in 2010 by acquiring six Massachusetts hospitals.  Over the next decade, Steward Health expanded nationwide, "serv[ing] millions of patients and employ[ing] thousands of physicians, nurses, and staff."  J.A. 56 (Am. Compl.).  Dr. de la Torre oversaw Steward Health's operations as the chairman and chief executive officer.

In May 2024, Steward Health filed for Chapter 11 bankruptcy.  Dr. de la Torre's complaint attributes the bankruptcy to the COVID-19 pandemic's "debilitating effect on Steward's revenue[,]" along with "a nationwide health care labor shortage and associated rising labor costs, rising fixed costs for equipment and supplies, [and] severe inflationary pressures."  J.A. 56.

---

[1] *See Musgrave v. Warner*, 104 F.4th 355, 358 (D.C. Cir. 2024) (analyzing motion to dismiss based on "allegations [that] are drawn from [the plaintiff's] complaint and matters of which we may take judicial notice"); *Langeman v. Garland*, 88 F.4th 289, 291–292 (D.C. Cir. 2023) ("[R]elevant '[p]ublic records are subject to judicial notice on a motion to dismiss when referred to in the complaint and integral to the plaintiff's claim.'") (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018)).

4

A few months later, the Committee launched an investigation into Steward Health's bankruptcy. *See* 170 CONG. REC. D776 (daily ed. July 25, 2024). The Committee scheduled for September 12, 2024, a hearing entitled "Examining the Bankruptcy of Steward Health Care: How Management Decisions Have Impacted Patient Care[.]" J.A. 76, 78 (Senate Report). On July 25, 2024, with the Committee's authorization, then-Chair Bernie Sanders subpoenaed Dr. de la Torre, as Steward Health's top manager, to testify at that hearing about "[t]he bankruptcy of Steward Health Care[.]" J.A. 82 (Committee subpoena).

Ten days after accepting service of the subpoena, Dr. de la Torre's counsel wrote to the Committee that "recent developments will necessitate that Dr. de la Torre's testimony be postponed." J.A. 87. Among other things, Dr. de la Torre asserted that "members of th[e] Committee continue to cast aspersions on Dr. de la Torre and appear determined to turn the hearing into a pseudo-criminal proceeding[.]" J.A. 88–89. It would be "wholly inappropriate" for Dr. de la Torre to testify, the letter insisted, because

> [i]t is not within this Committee's purview to make predeterminations of alleged criminal misconduct under the auspices of an examination into Steward's bankruptcy proceedings, and the fact that its Members have already done so smacks of a veiled attempt to sidestep Dr. de la Torre's constitutional rights by seeking sworn testimony on matters for which the Committee has pre-determined his guilt.

J.A. 89.

In response, the Committee reaffirmed that Dr. de la Torre was "expected to appear for testimony at the Committee's

hearing on September 12, 2024[.]" J.A. 104. The Committee explained that it "seeks testimony from Dr. de la Torre because [it] believes that he can provide useful information relevant to the matter being reviewed * * *, and that directing appropriate questions to Dr. de la Torre may yield important information for the Committee's legislative functions." J.A. 103. The Committee reassured Dr. de la Torre that he could "appear and assert [his Fifth Amendment] privilege in response to specific questions." J.A. 104. The Committee emphasized that "[t]he Fifth Amendment privilege against self-incrimination * * * does not permit witnesses to refuse to appear when summoned to testify before a congressional committee[.]" J.A. 103.

The Committee held the hearing as scheduled. Dr. de la Torre did not appear. Then-Ranking Member Bill Cassidy announced that he and then-Chair Bernie Sanders would "ask[] the committee to report a resolution to authorize civil enforcement and criminal contempt proceedings against Dr. de la Torre requiring compliance with the subpoena." J.A. 70 (Am. Compl.).

On September 18, 2024, Dr. de la Torre's counsel sent a second letter to the Committee that accused it of seeking "to frame Dr. de la Torre as a criminal scapegoat for the systemic failures in Massachusetts' health care system." 170 CONG. REC. S6406 (daily ed. Sept. 25, 2024). The letter "invoke[d] [Dr. de la Torre's] procedural and substantive rights under the Fifth Amendment of the U.S. Constitution, including the privilege to refrain from testifying at the Committee's Hearing." J.A. 61.

The next day, the Committee passed resolutions holding Dr. de la Torre in civil and criminal contempt of Congress. J.A. 61. Within a week, Senator Sanders reported the criminal resolution, S. Res. 837, 118th Cong. (2024), to the full Senate

floor for a vote, and it passed unanimously. *See* 170 Cong. Rec. S6407 (daily ed. Sept. 25, 2024); J.A. 63–64.

## C

On September 30, 2024, Dr. de la Torre sued the Committee and all but one of its members in the U.S. District Court for the District of Columbia. Dr. de la Torre did not sue Senator Rand Paul, the only Committee member who had not voted in favor of the contempt resolutions. Because any distinctions between the defendants do not matter for the purposes of this appeal, this opinion refers to them collectively as "Senators."

Dr. de la Torre's complaint alleges that the subpoena was *ultra vires* due to a lack of "legislative purpose," J.A. 66, and that the Senators' "attempts at compelling him to testify[,]" including attempting to enforce the subpoena, voting on the contempt resolution in committee, and presenting the criminal contempt resolution for a full Senate vote, violated the Fifth Amendment. J.A. 69–71. He claims that the Senators' "unlawful conduct" (1) caused him to resign as the chief executive officer and chairman of Steward Health, and (2) inflicted "immense harm and damages, including reputational damage[.]" J.A. 64–65. He asks the court to declare the Senators' actions unlawful, quash the subpoena, and enjoin the Committee "from causing Dr. de la Torre to suffer from additional punishment for invoking his Fifth Amendment rights[.]" J.A. 72; *see* J.A. 71.

The Senators moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Of relevance here, they argued that the Speech or Debate Clause jurisdictionally barred the suit because every activity Dr. de la Torre challenged—"the issuance of the Committee's subpoena, the conduct of the

Committee during its September 12 hearing, and the Committee Members' voting to report resolutions to the Senate—[was an] act[] that the Supreme Court and the D.C. Circuit have found to fall squarely within the legislative sphere protected by the Clause." Defs.' Mem. Points & Auths. in Support of Defs.' Mot. to Dismiss at 2, ECF No. 18-1. Dr. de la Torre cross-moved for jurisdictional discovery, which he claimed would uncover, among other things, "discoverable evidence of how and the extent to which Defendants planned to attack and ridicule Dr. de la Torre in public, rather than ask any legitimate questions of him[.]" Pl.'s Mem. Points & Auths. in Support of Pl.'s Mot. for Jurisdictional Disc. at 13, ECF No. 20-1.

The district court dismissed the case for lack of subject matter jurisdiction under the Speech or Debate Clause. *de la Torre v. Cassidy*, 800 F. Supp. 3d 54, 58 (D.D.C. 2025). Applying Supreme Court precedent, the district court held that the Clause immunized every act that the complaint targeted. *Id.* at 62–63. Dr. de la Torre's invocation of the Fifth Amendment did not change that result. *See id.* at 66 ("Dr. de la Torre's 'familiar argument—made in almost every Speech or Debate case'—that the 'defendants' conduct cannot be legislative because it was, in his view, illegal,' 'has been rejected time and time again.'") (quoting *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015)). As for Dr. de la Torre's argument that the Senators aimed solely to "pillory and degrade" him, the district court observed that "[t]he Supreme Court and the D.C. Circuit have refuted identical arguments that legislators' purpose was merely to harass and humiliate." *Id.*

The district court also denied Dr. de la Torre's motion for jurisdictional discovery. *de la Torre*, 800 F. Supp. 3d at 68. The court reasoned that "no facts that additional discovery could produce would affect the Speech-or-Debate Clause

analysis." *Id.* (quoting *Musgrave v. Warner*, 104 F.4th 355, 365 (D.C. Cir. 2024)).

Dr. de la Torre timely appealed.

## II

This court has appellate jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's grant of a motion to dismiss for lack of jurisdiction. *Musgrave*, 104 F.4th at 360. We review the denial of jurisdictional discovery for abuse of discretion. *Id.*

At the motion to dismiss stage, "we must 'accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in [the plaintiff's] favor.'" *Saline Parents v. Garland*, 88 F.4th 298, 303 (D.C. Cir. 2023) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). "But the Court need not accept inferences drawn by [a] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023).

## III

Dr. de la Torre insists that the Speech or Debate Clause does not bar this suit. He is completely wrong.

### A

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other place." U.S. CONST. Art. I, § 6, cl. 1. The purpose of the Clause "is to

insure that the legislative function the Constitution allocates to Congress may be performed independently[,]" without "intrusion by the Executive and the Judiciary into the sphere of protected legislative activities." *Musgrave*, 104 F.4th at 361 (quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975)). To that end, the Clause offers "several strands" of protection, including immunity from suit, an evidentiary privilege, and a testimonial privilege. *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995).

Dr. de la Torre's allegations fall squarely within the Clause's grant of immunity. "'[W]hen the actions upon which a plaintiff seeks to predicate liability are legislative acts,' the Speech or Debate Clause 'operates as a jurisdictional bar,' conferring absolute immunity from suit." *Musgrave*, 104 F.4th at 361 (quoting *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 941 (D.C. Cir. 2013)). Immunized "legislative acts" extend beyond literal speech and debate to encompass any

> integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*In re Sealed Case*, 80 F.4th 355, 359 (D.C. Cir. 2023) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)).

As a result, Speech or Debate Clause immunity applies to legislators' work on committees just as much as it does to floor votes and speeches. *See Musgrave*, 104 F.4th at 362 ("[W]e

have held that legislative acts include acts of voting, conduct at committee hearings, preparation of committee reports, authorization of committee publications and their internal distribution, and issuance of subpoenas concerning a subject on which legislation could be had.") (quotation marks omitted). In addition, because Senate and House committees act through their Members, the Clause's protection cannot be circumvented by suing the committee itself. *See Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (holding that a House "[c]ommittee's issuance of subpoenas * * * was a legislative act protected by the Speech or Debate Clause").

Nor can a plaintiff elbow his way past the Clause by alleging that improper motives drove the challenged legislative act. The Supreme Court has "ma[d]e clear that in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it." *Eastland*, 421 U.S. at 508.

**B**

On its face, Dr. de la Torre's complaint seeks to hold the Senators liable for those same core legislative actions to which immunity plainly attaches under settled precedent.

Dr. de la Torre principally challenges a prototypical legislative act: the enforcement of a valid congressional subpoena issued in service of a legitimate investigation. *See Eastland*, 421 U.S. at 504 (Congressional investigations and subpoenas "plainly fall[] within th[e] definition" of protected legislative acts.); *see also McGrain v. Daugherty*, 273 U.S. 135, 174 (1927) ("[T]he power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function.").

To qualify for immunity, a congressional investigation need only be "related to and in furtherance of a legitimate task of Congress." *Eastland*, 421 U.S. at 505. When analyzing subpoenas issued as part of a committee's legitimate investigation, courts ask only whether the legislative "inquiry may fairly be deemed within [the committee's] province." *Id.* at 506 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951)).

As Dr. de la Torre concedes, the Committee's subpoena satisfies both of *Eastland*'s tests. First, the Committee's investigation falls squarely within the Committee's legitimate oversight of "health[] and public welfare." STANDING RULES OF THE SENATE, Rule XXV § 1(*l*)(1)1; *see* de la Torre Opening Br. 29 ("Dr. de la Torre has never disputed" that the Committee's underlying investigation into Steward Health falls "within its jurisdiction" over "measures relating to education, labor, health and public welfare.") (formatting modified). After a nationwide health system went bankrupt, the Committee set out to understand why.

Second, the Committee had a clear and legitimate legislative purpose in seeking the testimony of Dr. de la Torre as Steward Health's chief executive—understanding from the vantage point of on-the-scene management what caused the system's decline. *See* de la Torre Opening Br. 29 (The district court "correctly found that initially issuing the subpoena to Dr. de la Torre was legislative."). In sum, "[e]ven the most cursory look at the facts presented by the pleadings reveals the legitimacy of the [Committee's] subpoena." *Eastland*, 421 U.S. at 506.

The remaining acts Dr. de la Torre targets—the Senators' votes on the contempt resolutions, as well as the presentation of the criminal resolution to the full Senate—similarly "fall

comfortably within the scope of the Speech or Debate Clause." *Rangel*, 785 F.3d at 24. "[V]oting by Members and committee reports are protected and a Member's conduct at legislative committee hearings * * * may not be made the basis for a civil or criminal judgment against a Member because that conduct is within the sphere of legitimate legislative activity." *Doe v. McMillan*, 412 U.S. 306, 311–312 (1973) (formatting modified); *see Gravel*, 408 U.S. at 617 ("Committee reports, resolutions, and the act of voting are equally covered[.]") (quotation marks omitted).

It makes no difference to this analysis that Dr. de la Torre presses a constitutional claim. "An act does not lose its legislative character simply because a plaintiff alleges that it violated * * * the Constitution[.]" *Rangel*, 785 F.3d at 24.

## C

Blowing past all that precedent, Dr. de la Torre insists his case is different. In his view, "[o]nce [he] invoked his Fifth Amendment rights," everything changed. de la Torre Opening Br. 32. The "Committee's continued pursuit" suddenly "served no conceivable legislative function, regardless of the legitimacy of the broader investigation." *Id.* And because Dr. de la Torre had invoked the Fifth Amendment across the board, the Senators' decision to press forward with the investigation and seek information "from Dr. de la Torre, who they understood would provide none," "laid bare" their "true motives * * * to subject him to public, televised ridicule for exercising his constitutional right to remain silent." J.A. 59 (Am. Compl.). Said more simply, Dr. de la Torre's position is that Speech or Debate Clause immunity evaporated the moment he sent his letter objecting to the entire hearing on Fifth Amendment grounds.

That argument is not even colorable.

Even assuming Dr. de la Torre could not have answered *any* questions, that does not excuse his failure to appear. Article I constitutionally empowers the Senators to investigate and to call witnesses pertinent to their legislative work, to ask them questions, and to hear whatever answers they provide, whether facts, opinions, or invocations of the Fifth Amendment. That Dr. de la Torre ultimately might not have provided any information to the Committee is beside the point: The "legitimacy of a congressional inquiry [is not] defined by what it produces." *Eastland*, 421 U.S. at 509. After all, "[t]he very nature of the investigative function—like any research—is that it takes the researchers up some 'blind alleys' and into nonproductive enterprises." *Id.* Contrary to Dr. de la Torre's ill-conceived assumption, the legitimacy of Congress's investigative and legislative work does not change just because a witness eschews answering questions on Fifth Amendment grounds. "To be a valid legislative inquiry there need be no predictable end result." *Id.*

At bottom, Dr. de la Torre's argument amounts to nothing more than a thinly veiled attack on the Senators' motives. Dr. de la Torre argues that, in requiring him to appear and invoke the Fifth Amendment, the Senators sought to "publicly humiliate and degrade Dr. de la Torre while he stood silently on his Fifth Amendment privilege." J.A. 60.

Even crediting Dr. de la Torre's disparagement of the Senators, it changes nothing. The subjective motives of Members of Congress do not affect the objective legitimacy of a congressional inquiry. The Supreme Court's decision in *Eastland* settles the matter. Just like Dr. de la Torre, the plaintiffs in *Eastland* argued that Speech or Debate immunity should not shield a congressional subpoena because the "'sole

14

purpose' of th[at] subpoena was to 'harass, chill, punish, and deter [plaintiffs] in their exercise of their [constitutional] rights and duties[.]'" 421 U.S. at 495. The Supreme Court was having none of it. The Court explained that "[t]he Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Id.* at 508 (emphasis omitted) (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *see also Tenney*, 341 U.S. at 377 ("[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators[.]"). Put differently, "[t]he wisdom of congressional approach or methodology is not open to judicial veto." *Eastland*, 421 U.S. at 509.

Dr. de la Torre's remaining attempts to extricate himself from settled precedent are equally futile.

*First*, Dr. de la Torre's effort to cherry-pick lines out of otherwise unhelpful precedent does not work. He argues that this case is like both *Gravel v. United States*, 408 U.S. 606 (1972), and *Doe v. McMillan*, 412 U.S. 306 (1973), in that "Congressional action was valid at the start but lost its legislative purpose later." de la Torre Opening Br. 34 (citing *Gravel*, 408 U.S. at 615, 624–625; *McMillan*, 412 U.S. at 306–324). Not at all.

In *Gravel*, the Supreme Court held that a Senator's alleged arrangement with a private company to publish the Pentagon Papers was not shielded by the Speech or Debate Clause. 408 U.S. at 622. The Court observed that "neither Congress nor the full committee [had] ordered or authorized the publication." *Id.* at 626. Instead, Senator Gravel had made the arrangements privately, "through the cooperation of Beacon Press[.]" *Id.* at 625. Such private contracting fell outside the Speech or Debate Clause's aegis from the outset. *See id.* at 626.

Dr. de la Torre does not seek relief against any privately orchestrated publication. He seeks to impose liability for the Senators' heartland legislative activities of investigation in support of a matter well within Congress's wheelhouse, their conduct in committee meetings, and their votes.

*McMillan* fits the same mold as *Gravel*. During an investigation of the D.C. public school system, a House subcommittee produced a report containing sensitive student information. *See McMillan*, 412 U.S. at 308–309. The Government Printing Office later printed and distributed the report publicly. *See id.* Affected students sued, alleging that the disclosure violated their constitutional right to privacy. *Id.* at 309. The Supreme Court held that the Speech or Debate Clause's protection did not extend to "those who, at the direction of Congress or otherwise, distribute actionable material to the public at large[.]" *Id.* at 316; *see id.* at 315 ("[T]he Speech or Debate Clause [does not] insulate[] legislative functionaries carrying out * * * nonlegislative directives[.]").

What Dr. de la Torre ignores is that the Supreme Court then separately ruled that the Speech or Debate Clause barred any portion of the complaint seeking "relief from the Congressmen-Committee members * * * for introducing material at Committee hearings that identified particular individuals, for referring the Report that included the material to the Speaker of the House, and for voting for publication of the report." *McMillan*, 412 U.S. at 312. That is the same type of intrinsically legislative conduct that Dr. de la Torre impermissibly asks this court to pass judgment on and enjoin.

*Second*, Dr. de la Torre claims that the district court erred when it "effectively adopted a rule of absolute immunity for all subpoena-related activities." de la Torre Opening Br. 36. The

district court did nothing of the sort. It applied the same well-settled precedent that Dr. de la Torre's arguments ignore. *See de la Torre*, 800 F. Supp. 3d at 62–63. While Dr. de la Torre objects to the district court's invocation of a "facially legitimate purpose" test for the subpoena, *see* de la Torre Opening Br. 34, that is a strawman. Since our review is *de novo*, how the district court described its test is beside the point. Under any test grounded in precedent, Dr. de la Torre's lawsuit targets purely legislative conduct at the heart of the Speech or Debate Clause.

*Third*, Dr. de la Torre complains that dismissing his suit "creates an insurmountable burden and deprives citizens of any avenue to obtain judicial redress for Congressional overreach or misconduct." de la Torre Opening Br. 36. But Dr. de la Torre's redress was to exercise his Fifth Amendment rights at the hearing, and he can still raise a constitutional defense should a contempt prosecution move forward. In addition, *Eastland* allows plaintiffs to attempt to quash a congressional subpoena if it lacks any legitimate legislative purpose from the outset.

But since Dr. de la Torre concedes that the subpoena was legitimate when issued, de la Torre Opening Br. 29, his real gripe is with the Constitution. By design, Speech or Debate immunity poses an insurmountable burden in cases falling within its reach, even cases asserting constitutional violations. *See McMillan*, 412 U.S. at 312–313 ("Congressmen and their aides are immune from liability for their actions within the legislative sphere, even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes.") (formatting modified).

*****

In short, uttering the words "Fifth Amendment" in response to a concededly legitimate subpoena is not the magic forgo-testifying-and-go-to-court-instead card that Dr. de la Torre imagines.

**D**

Dr. de la Torre next insists that "the district court erred by placing the burden on [him] to disprove application of Speech or Debate Clause immunity to Defendants' conduct." de la Torre Opening Br. 15. This argument misses the mark.

In district court, the Committee moved to dismiss on Speech or Debate Clause grounds, based on "long-established precedent[.]" Defs.' Mem. Points & Auths. in Support of Defs.' Mot. to Dismiss at 17, ECF No. 18-1. The district court then dismissed the case on purely legal grounds, accepting the truth of all facts alleged in the complaint. *See de la Torre*, 800 F. Supp. 3d at 60, 68. Because the Committee did not challenge, and the district court did not question, the *factual* basis for Dr. de la Torre's complaint, no evidentiary burden-shifting occurred. The district court simply decided a pure question of law. *Cf. Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (In the Foreign Sovereign Immunities Act context, "[i]f the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff.").

To be sure, the district court rejected Dr. de la Torre's argument that "Congress bears the burden of proving Speech

and Debate Clause immunity[,]" in favor of the "usual rule" that the plaintiff "bears the burden of proving federal subject-matter jurisdiction[.]" *de la Torre*, 800 F. Supp. 3d. at 60. But Dr. de la Torre has not explained how, if at all, that holding affected the outcome of the case. The district court just applied settled and binding caselaw to Dr. de la Torre's alleged facts, leaving no work for a burden of proof to do. *See id.* at 65.[2]

## E

The district court also acted well within its discretion in denying Dr. de la Torre's request for jurisdictional discovery.

Dr. de la Torre sought discovery of multiple categories of material, "including[] [d]ocuments, communications, and admissions" regarding:

---

[2] Dr. de la Torre mixes apples and oranges in relying on cases involving the Speech or Debate Clause's *evidentiary* privilege—not the jurisdictional immunity from suit. *See* de la Torre Opening Br. 16 (citing *United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995) (dicta)); *Massie v. Pelosi*, 72 F.4th 319, 321 n.1 (D.C. Cir. 2023) (explaining that the Clause's evidentiary and testimonial privileges "shield Members against certain forms of questioning, but do not deprive the court of jurisdiction").

Nor can Dr. de la Torre rely on *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006) (*en banc*). The portion of the plurality opinion that he cites addresses only how the Speech or Debate Clause operates within the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework for burden-shifting in employment discrimination cases. *See Fields*, 459 F.3d at 16 (plurality op.)

- "[W]hether and to what extent the Committee understood Dr. de la Torre's September 4, 2024 correspondence to be a full and unequivocal invocation of the Fifth Amendment, a fact which Defendants have disputed";

- "the Committee's enforcement efforts of the Subpoena, and what the purported purpose was of Dr. de la Torre appearing at the September 12 Hearing solely to re-invoke the Fifth Amendment, a fact at the heart of whether an action is within the 'legislative sphere'";

- "the ultimate legislative purpose of Dr. de la Torre's attendance at the September 12 Hearing despite his invocation—*i.e.*, which specific legislation it would have informed or how it would have served the deliberative and communicative legislative process";

- "the Committee's decision to 'overrule' Dr. de la Torre's Fifth Amendment invocation and the grounds for such decision, which informs the legislative purpose of the Committee's actions and whether they were within the 'legislative sphere'";

- "the Committee's threat of criminal penalties for failure to appear and what the Committee believed such a threat would accomplish such that the Court can establish whether such threats were within the 'legislative sphere'"; and

- "whether any legal staff on the Committee are bound by D.C. Bar ethics opinions, so this Court may determine whether the Committee abided by ethical

standards in compelling Dr. de la Torre's testimony over his Fifth Amendment invocation."

Reply to Opp. to Mot. for Jurisdictional Disc. at 15–16, ECF No. 25.

A district court properly denies jurisdictional discovery in a Speech or Debate Clause case when either (1) "the discovery * * * itself [would be] precluded by the Speech or Debate Clause," or (2) "no facts that additional discovery could produce would affect the Speech-or-Debate Clause analysis." *Musgrave*, 104 F.4th at 365 (quotation marks omitted). The district court took the second route, explaining that it "ha[d] already reviewed all the documents it require[d] to determine that the investigation's purpose was facially legislative." *de la Torre*, 800 F. Supp. 3d at 68 (quotation marks omitted).

The district court's decision makes eminent sense. None of the documents on Dr. de la Torre's list could change the hard fact that "each action Dr. de la Torre challenges is a 'legislative act protected regardless of its purpose.'" *de la Torre*, 800 F. Supp. 3d at 69 (quoting *Musgrave*, 104 F.4th at 366) (emphasis omitted). All that Dr. de la Torre's discovery seeks to do is to pry into legislative motives—precisely the type of judicial overreach that the Speech or Debate Clause forbids.

Dr. de la Torre claims that the district court made "three critical errors." de la Torre Opening Br. 40. No dice.

First, Dr. de la Torre objects that the district court "mischaracterized Dr. de la Torre's requests as seeking only information about 'the Committee's knowledge about his Fifth Amendment invocation[.]'" de la Torre Opening Br. 40 (quoting J.A. 141 (Am. Compl.)). To be sure, Dr. de la Torre also seeks information "regarding the Committee's

enforcement efforts[.]" Reply to Opp. to Mot. for Jurisdictional Disc. at 15, ECF No. 25. That makes no difference since none of what he seeks could move the needle on Speech or Debate Clause immunity.

Second, Dr. de la Torre argues that the "district court failed to apply the document-by-document analysis required by precedent." de la Torre Opening Br. 41. That is because there is no such document-by-document requirement for heartland invocations of legislative immunity under the Clause when, as here, no document could change the legal outcome.[3]

Third, Dr. de la Torre insists that the "district court failed to account for how its burden misallocation made discovery essential." de la Torre Opening Br. 41. As explained, the burden of proof was immaterial to the court's purely legal analysis.

In short, the only error in this case is Dr. de la Torre's misguided insistence that he can part the waters of Speech or Debate Clause immunity by waving around a letter invoking the Fifth Amendment and insisting that it stripped the Senators and the subpoena of all legislative legitimacy going forward.

---

[3] Once again, Dr. de la Torre confuses the Speech or Debate Clause's jurisdictional immunity with its separate *evidentiary privilege*. *See* de la Torre Opening Br. 41 (relying on *In re Sealed Case*, 80 F.4th at 359).

22

## IV

For the foregoing reasons, we affirm the district court's dismissal of the case for lack of jurisdiction and its denial of jurisdictional discovery.

*So ordered.*